BOLIN, Judge.
This is a wrongful death action instituted on behalf of minor children to recover damages for the death of their mother, Lilly Mae Turner Mardis. Made defendant is the Illinois Central Railroad Company. The cause of action is based on the alleged negligence of defendant’s employees in the operation of a freight train which struck and killed decedent on November 15, 1966, while she was walking across a trestle near Ruston, Louisiana. From judgment rejecting plaintiff’s demands he appeals.
Defendant filed an exception of no right of action leveled at the capacity of John Turner to sue on behalf of the children. Turner was qualified as tutor based upon his affidavit he was the maternal grandfather of the children. Defendant asserted Turner was in fact an uncle and not the grandfather, who allegedly was living. The exception was heard and argued and referred to the merits. On the hearing of the exception the trial judge observed that the appointment was not subject to collateral attack but refrained from passing on the exception at the termination of the trial in light of the outcome of the case. Defendant neither appealed nor answered *754 the appeal but reurges the exception in brief to this court.
On the merits we shall relate first the undisputed facts. On the date of the accident in which Lilly Mae Turner met her death she was walking along defendant’s track, which was known by the crew operating the freight train to be used frequently by pedestrians living in the vicinity. Medical testimony established that decedent had been treated for epilepsy for many years prior to the date of the accident. The doctor testified that between seizures she would appear and act normally, although immediately prior to and after a seizure she might be in a dazed condition.
There were four witnesses to the accident, i. e., the engineer, fireman, brakeman and a cab driver. The latter observed the accident from his cab which was in a parked position on a parallel street adjoining the tract. The train crew was called as witnesses under cross-examination and in chief, and their credibility was unquestioned. The engineer and fireman were in the cab of the train and each testified he first observed decedent when she was approximately 400 or 500 feet away walking westerly toward the train. The cab driver corroborated the statement by the crew that the whistle was blown almost constantly from a point some distance west of the trestle. At the time of the accident the train was on a regular run from Bossier City east to Ruston with a crew of five and was made up of three diesel engines and fifty freight cars. The diesel engine burns the headlight during all runs, day or night. All witnesses testified the train had slowed to about 15 to 20 miles per hour in anticipation of a probable stop at the Rock Island crossing about one-half mile beyond the trestle.
At all times while she was being observed decedent continued to walk in a normal manner toward the train and when about 100 feet from the train she crossed from the south to the north side of the track. There was no evidence that she was having an epileptic seizure or was acting in any abnormal manner. It was only when she was seen turning westerly again toward the train that the engineer realized she was making no effort to avoid being hit. Immediately thereafter he applied the emergency brakes. Although the evidence does not clearly establish the distance it took the train to stop, the testimony of the crew members was that the three engines and twelve freight cars passed the point of impact before stopping after application of the emergency brakes. No firm estimate could be made by the engineer or fireman as to the distance it would take a freight train traveling 15 to 20 miles per hour to make an emergency stop, but all agreed it would vary according to the load and arrangement of the freight cars. In no event could an emergency stop be made within 100 feet, which was the maximum distance between decedent and the engine when the engineer and fireman both realized at the same time she was not going to remove herself to a safe place beyond the cross-ties.
An investigator for the Illinois Central Railroad went to the scene two or three days after the accident and made pictures and took measurements of the trestle and of the track along the east and west side of the trestle. He testified the trestle was 85 feet, 9 inches long; 15 feet, 9 inches wide, and that the distance between the cross-ties and the guardrail was 5 feet, 6 inches. He testified the side of the engine extended at least 31 inches beyond the track, leaving a space of about 3 feet between the train and the guardrail.
The fireman, who was seated in the left or north side of the cab, testified he witnessed the impact and that the step on the engine struck decedent and threw her against and onto the guardrail of the trestle. It was the opinion of those who examined the body that she died instantly.
The acts of negligence charged against defendant’s employees were: operating the train in a dangerous and reckless manner *755 and at a rate of speed in excess of that fixed by the laws of the State of Louisiana; disregarding the rights and safety of others; failing to use the same degree of care and caution that a reasonable prudent man would have used in the same or similar circumstances and conditions; and failing to observe said individual on or near the railroad track or observing the same and failing to take such action as necessary and essential under the circumstances and conditions.
No written reasons for judgment were given by the trial court and the crux of the issue on appeal is whether or not the trial court erred as a matter of law in failing to find the employees, agents or servants of Illinois Central Railroad Company guilty of negligence which was the proximate cause of the death of decedent. In its answer defendant pleaded the decedent was contributorily negligent and in answer to this allegation plaintiff invoked the doctrine of last clear chance.
From our detailed study of the record we are convinced that both the engineer and fireman observed decedent while the train was from 400 to 500 feet away; that the engineer began to blow the whistle and ring the bell as was customary when workers or pedestrians were observed on or near the track; that these signals were heard by the cab driver who was at least 200 yards from the track when his attention was called to the track and the impending accident by the constant noise of the whistle and ringing of the bell; that decedent’s gait and her manner of walking gave no indication that she was unable to or would not heed the warning being given; that her crossing from the south to the north side of the track led to a reasonable belief she would move off the cross-ties and to a safe position before the train arrived at the place where she was walking; that the only evasive action which could have been taken when the engineer and fireman realized she was not going to protect herself was to apply the emergency brake and this was done, but at the time it was too late to avoid striking decedent.
From these findings we conclude plaintiff has failed to prove by a preponderance of the evidence that the crew was negligent in its operation of the freight train.
Having concluded plaintiff’s demand should be rejected on the merits we preter-mit a determination of whether the exception of no right of action is before us on appeal and if so whether it has merit.
For the reasons assigned the judgment of the lower court is affirmed at appellant’s